## Taylor *versus* Mitchell. ·

1. A statute should be interpreted so as to operate prospectively only, unless the language is so clear as to preclude all questions as to the intention of the legislature.

2. Retrospective laws generally, if not universally, work injustice, and ought to be so construed only when the mandate of the legislature is imperative.

3. When a testator makes a will formally executed according to the law existing at its execution, it would unjustly disappoint his right of disposition to apply to it a rule subsequently enacted, though before his death.

4. The Act of April 26th 1855 (Charities), relates to wills thereafter to be *made*.

February 10th 1868. Before THOMPSON, C. J., STRONG, AGNEW and SHARSWOOD, JJ. READ, J., at Nisi Prius.

Certificate from Nisi Prius: In Equity: July Term 1867, No. 21.

This was a bill by Ellen Keene Mitchell against Franklin Taylor, filed May 11th 1867.

The bill alleged that Sarah Lukens Keene was seised of certain real estate at the corner of Radcliff and Mulberry streets, in Bristol, Pennsylvania, and died in 1866, having made a will which was proved June 9th 1866. The will, which was made part of the bill, was dated November 18th 1843, and contains, amongst others, these provisions :—

"I give and devise to my trustees and their successors, who shall be appointed as hereinafter directed, my large house at Bristol, built by myself * * with all its furniture, and all within and about it, and the whole of the lot on which it stands, to be applied and used under the direction of the last-named persons and their successors, whom they shall appoint as trustees, as an establishment for the reception and maintenance for ever, of five, six, or more aged gentlewomen, who are widows, or single women, unmarried, of respectability, but decayed fortunes, and who have become destitute at an advanced age of the means of support, and are bereaved of friends that can, or who will assist them, alone, friendless, and helpless; to such, and to such only, do I direct my trustees and their successors to apply it. As they leave its asylum by their own will, or the will of their Almighty Protector, their places to be supplied by others of the same denomination, for ever. And as a maintenance for them, and as endowment of

7 P. F. SMITH—14

[Taylor *v.* Mitchell.]

the institution, I give and devise to my trustees before named, and their appointed successors, the sum of $20,000; and I direct that the small tenement and messuage and large lot of ground at the corner of Radcliff and Mulberry streets   *   *   shall pass to said trustees, as part of said $20,000, and said trustees shall have power to sell or lease the same as in their discretion, as to time and occasion shall appear best for the institution.        *        *        *

"I name and constitute as my executors and trustees, the Honorable Charles Huston, of Bellefonte, Samuel S. Carpenter, Esq., and my dear niece, Ellen Keene.

"I appoint Henry U. Underdonk, Bishop of the Protestant Episcopal Church of Pennsylvania, to be associated with my trustees for the institution, by my will established and endowed."

The bill further set out that the complainant was the only one of the aforenamed trustees who survived the testatrix; that on the 30th of April 1867, by articles of agreement executed by both the defendant and herself, they contracted for the purchase and sale, for the consideration of $6000, of the above-mentioned lot in Bristol; that the defendant refuses to comply with the contract, alleging that she cannot make a good title;—she prayed that the defendant might be compelled specifically to execute the contract.

The defendant admitted the facts set out in the bill, but alleged that the complainant had no power to convey, because the devise by Miss Keene is void, the will not having been attested by two credible and disinterested witnesses, &c.

The case was submitted at Nisi Prius on bill and answer to Thompson, J., who delivered the following opinion, decreeing that the defendant specifically execute the contract.

"The bill and answer in this case are doubtless a *form* adopted by the parties in order to obtain the opinion of the court of the last resort, upon the title to the premises described, rather than the substance of a case of real litigation.   Had it been the latter, it would not have escaped the observation of the able counsel for the defendant that there was an ample remedy at law in the premises on the part of the plaintiff, and that the case did not belong to equity at all.   But this point is not taken by the defendant, and I will leave it to the court in banc to act upon it, *ex mero motu*, if thought best, when it becomes possessed of the case, if it ever does.   I do not feel it a duty to elaborate an opinion on the point, whether a will, made in 1843, devising property to a charitable use, with but a single subscribing witness, is void under the provisions of the Act of 26th April 1855, requiring two in such cases, the will not taking effect by the death of the testator until June 1866.   The provision of the Act of 1855 on this point is: 'That no estate, real or personal, *shall hereafter* be bequeathed, devised, or conveyed, &c., for charitable uses, except the same be

[Taylor v. Mitchell.]

done by deed or will, attested by two credible witnesses,' &c., 'and all dispositions of property contrary hereto shall be void, and go to the residuary legatee or devisee,' &c. The prohibitory clause is not to be treated as an independent provision. It is part and parcel of the provision brought into action by the section, and that section is designed to operate prospectively, and not retrospectively. After the learned and exhaustive opinion of my brother Read, in Gable's Executors v. Daub, 4 Wright 217, on a point entirely germain to the question before me, it would be an affectation of research on my part to refer to other authorities in support of this position. This case is fully ruled by that, and the plaintiff is entitled to the relief prayed."

The defendant appealed and assigned the decree for error.

*G. W. Biddle*, for appellant.—The Act of 26th April 1855, § 11, Pamph. L. 328, Purd. 146, pl. 6, declares " that no estate, real or personal, shall hereafter be bequeathed, devised or conveyed, &c., for charitable uses, except the same be done by deed or will, attested by two credible witnesses," &c., and " all dispositions of property contrary hereto shall be void, and go to the residuary legatee or devisee, next of kin or heirs, according to law."

The legislature has power to pass laws requiring additional formalities to a will made before its passage, the testator dying after : 1 Redfield on Wills 406, 407, pl. 18 ; Cushing v. Aylwin, 12 Metc. 169 ; Bishop v. Bishop, 4 Hill 138 ; Lawrence v. Hebbard, 1 Bradford 252 ; Elcock's Will, 4 McCord 39 ; Van Tilburg v. Hollinshead, 1 McCarter 32 ; Satterlee v. Matthewson, 16 S. & R. 169.

The Act of 1855 is a public general law and notice to all desirous to make charitable gifts: Dwarris on Statutes 715 ; Short's Est., 4 Harris 63 ; Martindale v. Warner, 3 Id. 471 ; Price v. Taylor, 4 Casey 95 ; Criley v. Chamberlain, 6 Id. 161 ; Haldeman v. Haldeman, 4 Wright 30 ; Reinhart v. Lantz, 1 Id. 488 ; Gable v. Daub, 4 Id. 217 ; Ashburnham v. Bradshaw, 2 Atk. 36 ; Attorney-General v. Hartwell, Ambler 453 ; Tuffnell v. Page, 2 Atk. 37 ; Skerrett v. Burd, 1 Whart. 246 ; Balliet's Appeal, 2 Harris 460 ; Murry v. Murry, 6 Watts 353 ; Mullen v. McKelvy, 5 Id. 399 ; Kurtz v. Saylor, 8 Harris 205 ; Lewis v. Lewis, 2 W. & S. 455 ; Mullock v. Souder, 5 Id. 198.

*Eli K. Price*, for appellee, referred to and commented on many of the citations of appellant.

The opinion of the court was delivered, March 2d 1868, by

SHARSWOOD, J.—There is no canon of construction better settled than this, that a statute shall always be interpreted so as to

[Taylor *v*. Mitchell.]

operate prospectively and not retrospectively, unless the language is so clear as to preclude all question as to the intention of the legislature: Neff's Appeal, 9 Harris 243; Fisher *v*. Farley, 11 Id. 501; Becker's Appeal, 3 Casey 52. Lord Bacon expressed concisely the same rule: *Neque enim placet Janus in legibus.*

Retrospective laws generally if not universally work injustice, and ought to be so construed only when the mandate of the legislature is imperative. When a testator makes a will, formally executed according to the requirements of the law existing at the time of its execution, it would unjustly disappoint his lawful right of disposition to apply to it a rule subsequently enacted, though before his death.

While it is true that every one is presumed to know the law, the maxim in fact is inapplicable to such a case; for he would have an equal right to presume that no new law would affect his past act, and rest satisfied in security on that presumption.

But the words of the act entitled "an act relating to corporations and to estates held for corporate, religious and charitable uses," passed April 26th 1855, Pamph. L. 328, do not justify such a construction. It provides, § 11, "that no estate, real or personal, shall hereafter be bequeathed, devised or conveyed to any body politic or to any person in trust for religious or charitable uses except the same be done by deed or will, attested by two credible and at the same time disinterested witnesses, at least one calendar month before the decease of the testator or alienor, and all dispositions of property contrary hereto shall be void, and go to the residuary legatee or devisee, next of kin or heirs according to law." It is true, that every will is ambulatory until the death of the testator, and the disposition made by it does not actually take effect until then. General words apply to the property of which the testator dies possessed, and he retains the power of revocation as long as he lives. The act of bequeathing or devising, however, takes place when the will is executed, though to go into effect at a future time. The language of the Act of Assembly, in its ordinary use and meaning, relates to wills thereafter to be made. It is only by a technical construction that it can be made to bear a different sense. Such a construction might justly be applied to a law which on its face appears to be retrospective, in order to restrain it to a prospective operation, but it would certainly be a novelty to apply it conversely.

The authorities sustain this view. Most of them have been collected and reviewed by our brother Read, in Gable's Executors *v*. Daub, 4 Wright 217. The case of Ashburnham *v*. Bradshaw arose under the statute 9 Geo. II. c. 36, which uses the words "shall be given;" yet a will published before the statute went into effect, though the testator survived that period, was established, and the trust of the charity carried into execution. This was a decree

[Taylor *v.* Mitchell.]

by Lord Hardwicke, upon a certificate of eleven of the twelve judges to whom the case had been referred for their opinion on the validity in law of the devise, and although Lord Northington is reported to have remarked, in Attorney-General *v.* Hartwell, Ambler 451, that he thought a great deal might be said in that case against the determination, yet it has been so repeatedly and expressly recognised, that its authority must now be conceded as firmly established: Attorney-General *v.* Lloyd, 1 Ves. 33; s. c. 3 Atk. 552; Willet *v.* Sandford, 1 Ves. 178, 186; Attorney-General *v.* Andrews, 1 Id. 225; Mulback *v.* Souder, 5 W. & S. 198; Gable's Executors *v.* Daub, 4 Wright 217.

Decree affirmed.